IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA B.,[1]

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:23-cv-01148-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Amanda B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in July 1985, plaintiff alleges disability beginning January 15, 2020,[2] due to back pain, neck pain, depression, anxiety, irritable bowel syndrome, and memory loss. Tr. 282, 315. On December 14, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 32-65. On February 1, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-26. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff "meets the insured status requirements of the Social Security Act through March 31, 2023," and had "not engaged in substantial gainful activity since January 15, 2020." Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease with disc protrusion at cervical and lumbar spine with spinal stenosis; depressive disorder; PTSD; and right shoulder degenerative joint disease/rotator cuff tear." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b) except:

> she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, kneel and crawl, but occasionally stoop and crouch. She can occasionally reach overhead with the right, dominant upper extremity. She can frequently, but not constantly, reach in all other directions with

---

[2] Plaintiff previously applied for and was denied benefits, such that this is the earliest date of potential entitlement. Tr. 16, 99.

Page 2 – OPINION AND ORDER

the right, dominant, upper extremity. She requires the ability to alternate between sitting and standing at will while remaining on task. She can tolerate occasional exposure to workplace vibration and to atmospheric conditions as defined in Selected Characteristics of Occupations. She can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. She can perform simple, routine tasks, and can tolerate occasional contact with the general public.

Tr. 20.

At step four, the ALJ determined plaintiff was "capable of performing past relevant work as a mail clerk."[3] Tr. 26.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting her subjective symptom statements concerning the extent of her physical impairments.[4] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

---

[3] At the hearing, the VE also identified three representative occupations consistent with plaintiff's RFC – one light and two sedentary exertion positions. Tr. 60-61.

[4] Although plaintiff suffers from both physical and mental impairments, her opening brief focuses exclusively on her testimony and evidence relating to her lumbar and cervical issues. Pl.'s Opening Br. 3, 9-12 (doc. 10); *see also Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (party waives an issue on appeal that is not "specifically and distinctly raised in [its] opening brief").

Page 3 – OPINION AND ORDER

testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified she was unable to work due to back, neck, and shoulder pain, all of which have "gotten worse" since her last hearing. Tr. 46, 49. Concerning her back, plaintiff stated: "it's mostly a lot of stabbing, throbbing pain, chronic weakness . . . sharp, burning pains that radiate down my back, and into my legs, and into my arms [and numbness] tingling down both legs now, instead of just one." Tr. 46. Regarding her neck, plaintiff similarly endorsed: "stabbing pain, a lot of throbbing. It's like a twisting – like a burning sensation, like it's a knife that's in my neck. And I also get numbness down my right arm." Tr. 49. Plaintiff indicated her shoulder pain started "over a year ago," which resulted in "a lot of weakness" and difficulty with overhead motions, such that she would be having surgery at the end of the month.[5] Tr. 50.

---

[5] Plaintiff's shoulder surgery was ultimately rescheduled due to a bout of "bronchitis and sinusitis." Tr. 255.

Page 4 – OPINION AND ORDER

Plaintiff rated her back and neck pain at "usually around seven to nine" on a pain scale of one to ten, with "ten meaning you need to be hospitalized." Tr. 46, 49. As a result of these impairments, plaintiff testified she could only sit or stand for "five to ten minutes" at a time, walk for three blocks, and was constantly repositioning. Tr. 47, 54. Plaintiff also remarked that she spent "most" – i.e., "roughly around 60 percent" – of her day in bed. Tr. 53-55. In terms of daily activities, plaintiff testified that her mother or sister do all household chores except for preparing simple meals. Tr. 56.

After summarizing the hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision." Tr. 20. In particular, the ALJ cited plaintiff's daily activities, "improve[ment] with appropriate treatment," and the "disparity between [her] subjective complaints and clinical presentation." Tr. 21-22.

Concerning the former, the ALJ noted plaintiff's activities – i.e., "remain[ing] 'moderately active'" and "going to movies, walking her dog, going out to eat, and baking" – "suggest she retains significant physical function."[6] Tr. 21. "Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

---

[6] In evaluating the first step of the sequential process, the ALJ acknowledged that plaintiff worked after the alleged onset date, albeit not at substantial gainful levels, and obtained "unemployment benefits between 2020 and 2021." Tr. 18. But the ALJ did not reference this evidence in formulating the RFC. *See* Def.'s Resp. Br. 4-5 (doc. 12) (arguing only that plaintiff's "symptoms improved with conservative treatment," and "inconsistent" objective medical evidence and daily activities belied her hearing statements – citing to the fact "she informed treatment providers that she was 'moderately active' [and] enjoyed going to movies, walking her dog, going out to eat, and baking").

Page 5 – OPINION AND ORDER

that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Yet, in the case at bar, the ALJ mischaracterized plaintiff's daily activities in evaluating her subjective symptom testimony such that this finding is not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" that was "not entirely accurate regarding the content and tone of the record" did not support an adverse credibility finding).

    Significantly, there is no evidence that plaintiff remained "moderately active" or went to movies or to eat out, walked her dog, or baked within or around the dispositive timeframe. Rather, the record, when read in context, reflects that plaintiff used to enjoy these activities. That is, the sole references to these activities occur in the context of the "social history" that is relayed in each of treating provider Brock Trejo, M.D.'s chart notes. Tr. 469, 482, 488, 494, 499, 511, 515, 753, 784, 794, 813, 820, 831, 994, 1328. The "social history" is repeated verbatim despite there being no indication that plaintiff continued to engage in these activities during the adjudication period. *See* Tr. 493-95 (Dr. Trejo's February 2020 chart note including the same historical information, but the "subjective" and "assessment" portions reflecting that plaintiff "has not been doing well" with her "chronic low back pain" – "she has been less active [because] of her back [and] has not been able to do [physical therapy] or go to the gym"). And other portions of the record reflect that plaintiff frequently struggled with daily activities due to pain. Tr. 364, 412, 466, 503, 885, 895, 909, 999, 1010, 1071, 1081, 1103, 1119, 1280.

    Even so, the activities cited by the ALJ are not wholly contravened by plaintiff's hearing testimony. Stated differently, none of plaintiff's purported activities are strenuous or include specifics in terms of duration/frequency. *Cf. Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (superseded by statute on other grounds) (ALJ erred by relying on the claimant's purported

child care activities when "there is almost no information in the record about [those] activities," emphasizing "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest") (citation and internal quotations omitted); *see also Reddick*, 157 F.3d at 722 ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

The ALJ also relied on plaintiff's "recent medical records [which] do not support a finding of disability," including her improvement with "chiropractic adjustments in early 2021." Tr. 21-22. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted); *see also Smartt*, 53 F.4th at 498 ("an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation") (citation and internal quotations and brackets omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ accepted the underlying impairment as medically determinable and severe at step two, and the ALJ's other reasons for rejecting the claimant's subjective symptom statements are not supported by substantial evidence.

In any event, the ALJ once again mischaracterized the record in recounting the objective medical evidence. While the ALJ acknowledged plaintiff's normal examination findings, he largely ignored those findings showing an abnormal gait, tenderness, and/or decreased strength or range of motion. *See, e.g.*, Tr. 467, 869, 886, 896, 910, 918, 939-40, 957-58, 1000, 1011, 1022, 1039, 1085, 1118, 1216, 1281.

Page 7 – OPINION AND ORDER

Moreover, plaintiff had cervical and lumbar imaging completed in 2021 and 2022 showing numerous back and neck issues. Tr. 1295, 1301-02, 1307-08; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even "mild degenerative disc disease can have disabling effects") (collecting cases). Given these findings, treating specialist Fred Naraghi, M.D. repeatedly stated: "[Plaintiff] is unable to work, permanently disabled, as a result of severe disc herniation in the cervical spine, C5-6, C6-7, C3-4, and L4-5, L5-S1 recurrent disc herniation in the lumbar spine and disc degeneration." Tr. 888, 898, 912, 920, 1000-04, 1015, 1026, 1087-88, 1262-70, 1272, 1283. Dr. Naraghi also indicated that plaintiff had "exhausted multiple modalities of conservative care including chiropractic and acupuncture, C-collar use with no significant relief," and had limited surgical options given the "normal" nerve conduction studies. Tr. 1271-77, 1279-83. Essentially, there is nothing in the record to contravene plaintiff's self-reports concerning her need to lie down frequently throughout the day to relieve back and neck pain.[7]

Plaintiff also obtained right shoulder imaging in July 2022. Tr. 966, 1287-90. The MRI revealed "significant supraspinatus tendinopathy with an acromial spur causing impingement and bursitis" and a "possible low-grade supraspinatus tear." Tr. 1293. Because conservative measures "includ[ing] injections[,] ibuprofen[,] chiropractic treatment[,] heat[,] medicines[,] therapy and

---

[7] Indeed, the ALJ found the August 2019 medical opinion of examining provider Michael Henderson, D.O. persuasive, at the exclusion of the more recent treating source opinions of Dr. Trejo and nurse practitioner Julie Lee. Tr. 22-23, 26, 426-35. However, Dr. Henderson's opinion predated the alleged onset date, as well as the emergence of plaintiff's cervical and shoulder issues, and inheres to a prior adjudication period that is not subject to this Court's review. See Tr. 16 (ALJ finding "that the presumption of continuing non-disability has been rebutted in the current adjudication by the changed circumstances resulting from differences in the designated severe impairments"); see also Meier v. Astrue, 404 Fed.Appx. 150, 151 (9th Cir. 2010) (when a plaintiff "suffers from a degenerative condition, [her] participation in activities several years ago carries less weight than does his more recent activity level"). Furthermore, although the ALJ expressly discussed plaintiff's treatment with Dr. Naraghi at the hearing, the ALJ neglected to address Dr. Naraghi's myriad diagnoses and opinions in his decision. Tr. 39-40, 47-48.

rest" had failed, plaintiff was referred for surgery. Tr. 1291-94; *see also* Tr. 1188-1202 (chiropractic chart notes from December 2020 through June 2022, evincing ongoing and significant pain despite temporary relief from treatment). The ALJ's finding concerning plaintiff's improvement with chiropractic treatment simply failed to take into consideration the degree to which pain control was achieved.

Because the ALJ neglected to provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptoms statements, the question becomes the proper legal remedy. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, the Court finds there are ambiguities in the record that support the need for further proceedings. On one hand, it is undisputed that plaintiff suffers from back, neck, and shoulder pain that has persisted despite treatment with a number of conservative modalities (and, in the case of her lumbar spine, prior surgery). The ALJ also erred in regard to plaintiff's hearing testimony, which suggests limitations beyond those articulated in the RFC.

On the other hand, despite indicating that her back condition had worsened, the Court notes that plaintiff endorsed more limited sitting, standing, and walking abilities in regard to her prior

application, and then began working from October 2019 through at least early 2020 approximately 10 hours per week. Tr. 23, 75, 295, 317, 458, 500. And there is some indication she again resumed employment in 2022. *See* Tr. 1039-45 (plaintiff seeking treatment for a stomach virus in April 2022, noting she "[h]as had to miss 4 days of work between last week and today," and requesting a "work [excuse] note"). Finally, plaintiff has not sought treatment for her mental health conditions, despite multiple recommendations and referrals, even though her providers have repeatedly informed plaintiff that her physical symptoms may be impacted by her mental health. *See, e.g.*, Tr. 466, 507, 513, 786, 809; *see also* Tr. 796 ("she does have multiple somatic symptoms mostly pain . . . She is preoccupied with her back, nose, stomach, and ways to lose weight [and] reports heightened level of anxiety about these health problems").

Accordingly, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding plaintiff's functional abilities, coupled with the complex interplay between her physical and mental symptoms, referral to consultative examinations or the use of a medical experts specializing in psychology and spinal impairments would be helpful. Additional efforts should also be made to obtain plaintiff's most recent records, as it is unclear whether plaintiff underwent shoulder surgery. Therefore, upon remand, the ALJ must seek out additional records and consultative exams or medical experts and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 26th day of April, 2024.

>    /s/ Jolie A. Russo
> Jolie A. Russo
> United States Magistrate Judge